# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
## CENTRAL DIVISION

GOVERNOR KRISTI NOEM, in her
official capacity as the Governor of
South Dakota, et al.,

<em>Plaintiffs</em>,

v.

DEB HAALAND, in her official
capacity as United States Secretary of the
Interior, et al.,

<em>Defendants.</em>

Case No. 3:21-cv-03009

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................... 4

    A.   The Memorial's unique importance to Independence Day celebrations in
        the United States................................................................................................ 4

    B.   The State and DOI enter into a Memorandum of Agreement and Project
        Agreement to restore the Memorial's fireworks show. ....................................7

    C.   DOI abandons the Memorandum of Agreement and refuses to permit the
        2021 firework display.......................................................................................9

    D.   Governor Noem responds to DOI's decision...................................................11

STANDARD OF REVIEW ..............................................................................................13

ARGUMENT...................................................................................................................14

   I.   The State is likely to succeed on the merits of its APA claim............................14

    A.   DOI's decision is arbitrary and capricious because it failed to provide a
        reasoned explanation for its actions. ..............................................................15

    B.   DOI's decision is arbitrary and capricious because it runs counter to the
        evidence. .........................................................................................................19

   II.  The State satisfies the remaining criteria for a preliminary injunction...............21

   III.  The Court should direct DOI to issue the fireworks permit. .............................25

CONCLUSION................................................................................................................28

# TABLE OF AUTHORITIES

## CASES

*A.L. Pharma, Inc. v. Shalala,*
  62 F.3d 1484 (D.C. Cir. 1995) ...................................................................31

*Bd. of Cty. Comm'rs of Cty. of Adams v. Isaac,*
  18 F.3d 1492 (10th Cir. 1994) .................................................................17

*Bus. Roundtable v. S.E.C.,*
  647 F.3d 144 (D.C. Cir. 2011) ......................................................... 16, 19

*Carpet, Linoleum & Tile Layers, Local Union No. 419 v. Brown,*
  656 F.2d 564 (10th Cir. 1981) .................................................................28

*D.M. by Bao Xiong v. Minnesota State High Sch. League,*
  917 F.3d 994 (8th Cir. 2019) ........................................................... 14, 26

*Dep't of Com. v. New York,*
  139 S. Ct. 2551 (2019) ...................................................16, 18, 21, 22

*Dep't of Homeland Sec. v. Regents of the Univ. of California,*
  140 S. Ct. 1891 (2020) ..................................................................... 16, 30

*Drakes Bay Oyster Co. v. Salazar,*
  921 F. Supp. 2d 972 (N.D. Cal. 2013) ..................................................15

*Encino Motorcars, LLC v. Navarro,*
  136 S. Ct. 2117 (2016) .............................................................................20

*Forest Guardians v. Babbitt,*
  174 F.3d 1178 (10th Cir. 1999) .............................................................32

*Gen. Motors Corp. v. Harry Brown's, LLC,*
  563 F.3d 312 (8th Cir. 2009) ..................................................................24

*Grace Healthcare of Benton v. U.S. Dep't of Health & Hum. Servs.,*
  603 F.3d 412 (8th Cir. 2009) ....................................................15, 16, 18, 23

*Hondros v. U.S. Civ. Serv. Comm'n,*
  720 F.2d 278 (3d Cir. 1983) ...................................................................28

*Huff v. Vilsack,*
  195 F. Supp. 3d 343 (D.D.C. 2016) ...................................................................29, 30, 31

*ILMC v. Perez,*
  2014 WL 1668131 (M.D.N.C. April 25, 2014) ...............................................................28

*McClung v. Paul,*
  788 F.3d 822 (8th Cir. 2015) .................................................................................. 15, 16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ...........................................................................................................3

*Nat'l Parks Conservation Ass'n v. E.P.A.,*
  788 F.3d 1134 (9th Cir. 2015) ......................................................................................19

*New Holy v. DOI,*
  2020 WL 3542251 (D.S.D. June 30, 2020) ...................................................................29

*Niobrara River Ranch, L.L.C. v. Huber,*
  373 F.3d 881 (8th Cir. 2004) ................................................................................... 16, 21

*Norton v. S. Utah Wilderness Alliance,*
  542 U.S. 55 (2004) .........................................................................................................29

*Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers,*
  826 F.3d 1030 (8th Cir. 2016) ......................................................................................14

*Rodway v. USDA,*
  514 F.2d 809 (D.C. Cir. 1975) .......................................................................................32

*Roe v. Dep't of Def.,*
  947 F.3d 207 (4th Cir. 2020) .........................................................................................29

*Scholl v. Mnuchin,*
  489 F. Supp. 3d 1008 (N.D. Cal. 2020) ........................................................................19

*Sessler v. City of Davenport, Iowa,*
  990 F.3d 1150 (8th Cir. 2021) ......................................................................................14

*Sierra Club v. U.S. Army Corps of Engineers,*

645 F.3d 978 (8th Cir. 2011)........................................................................28

*Sugule v. Frazier*,
    639 F.3d 406 (8th Cir. 2011)............................................................ 16, 21

*Union Pacific R. Co. v. U.S. Dept. of Homeland Sec.*,
    738 F.3d 885 (8th Cir. 2013)....................................................................31

*Xiaomi Corp. v. Dep't of Def.*,
    2021 WL 950144 (D.D.C. Mar. 12, 2021) ........................................24, 25, 26

**STATUTES**

5 U.S.C. §706 ................................................................................... 14, 25

**OTHER AUTHORITIES**

Calvin Coolidge, *Address at the Opening of Work on Mount Rushmore in Black Hills, SD*,
    Aug. 19, 1927, *archived at* https://bit.ly/32qBiiZ............................................1

Franklin Delano Roosevelt, *Informal Extemporaneous Remarks By The President: Mount
    Rushmore National Memorial*, Aug. 30, 1936.........................................................5

George H.W. Bush, *Remarks at the Dedication Ceremony of the Mount Rushmore National
    Memorial in South Dakota*, July 3, 1991 ...........................................................4

Interim Public Health Recommendations for Fully Vaccinated People, CDC (Apr. 27,
    2021), https://bit.ly/3t06qk9.....................................................................21

John Adams, *Letter from John Adams to Abigail Adams*, July 3, 1776, *archived at*
    Massachusetts Historical Society, https://bit.ly/3ahI2Ef. ...........................................1

Justin Gurley, *Booms, Blasts, and Cracks Heard 'Round the World*, Pennsylvania State
    University Library Center for the Book, Spring 2010 ...................................................2

Participate in Outdoor and Indoor Activities, CDC (Jan. 14, 2021),
    https://bit.ly/3nnrwro................................................................................20

Press Briefing by White House COVID-19 Response Team and Public Health
    Officials, White House (April 23, 2021), https://bit.ly/2R159fi ("Vaccine
    Announcement")................................................................................. 21, 24

Rapid City Journal, *Mount Rushmore fireworks canceled*, Jan. 14, 2010,
    https://bit.ly/2P0b2cd.............................................................................................................7

**RULES**

36 C.F.R. §1.6 ...........................................................................................................................26

**INTRODUCTION**

Independence Day should "be celebrated" by every generation of Americans "with Pomp and Parade, with Shews, Games, Sports, Guns, Bells, Bonfires and Illuminations from one [e]nd of this Continent to the other." John Adams, *Letter from John Adams to Abigail Adams*, July 3, 1776, *archived at* Massachusetts Historical Society, https://bit.ly/3ahI2Ef. As a "distinctly national monument," Mount Rushmore National Memorial (the "Memorial") was designed to be "a national shrine to which future generations will repair to declare their continuing allegiance to independence [and] self-government." Calvin Coolidge, *Address at the Opening of Work on Mount Rushmore in Black Hills, SD*, Aug. 19, 1927, *archived at* https://bit.ly/32qBiiZ. Throughout its existence, the Memorial has "celebrated the national history and spirit of democracy during the July 4th holiday." Ex. A, National Park Service, *July 4th Holiday Fireworks Program Environmental Assessment*, 1-3 (April 2003) ("April 2003 Assessment").

The Department of the Interior ("DOI") itself has recognized the "need for the Memorial to host a fun, inspirational, traditional, and educational program celebrating our nation's birthday," through "a marquee event, such as fireworks." *Id.* Thus, consistent with the Founders' vision for Independence Day commemorations and the purpose of the Memorial itself, the Memorial has hosted safe and responsible Independence Day fireworks shows many times over. The events draw thousands of visitors every year and have "a huge impact" on the State's economy and its residents'

1

"sense of pride." Justin Gurley, *Booms, Blasts, and Cracks Heard 'Round the World*, Pennsylvania State University Library Center for the Book, Spring 2010.

Each of the previous four presidential administrations allowed the Memorial to conduct a patriotic fireworks show on Independence Day Weekend; permits were denied only when concrete, precisely articulated safety risks or logistical roadblocks rendered the shows objectively unsafe or impracticable. Even then, the State and the federal government were in lockstep agreement about the importance of the Memorial's Independence Day celebrations and the necessity of their continued existence. In October 2019, DOI and the State signed an agreement to continue the traditional fireworks show in 2020 and the years thereafter. Just last year, DOI issued the State a permit to hold an outdoor Independence Day celebration at the Memorial. That event was a rousing success, and not a single COVID-19 case was traced back to it.

Earlier this year, however, DOI departed from this longstanding precedent and reneged on its agreement with the State. On March 11, 2021, DOI sent the State an abrupt, 620-word letter stating that the Independence Day fireworks show would not be allowed at the Memorial this year. The letter contained no specific factual findings and referenced no implementing laws or governing regulations.

The denial letter was instead a patchwork of vague and speculative purported concerns about: (1) the COVID-19 risk to spectators who would visit the Memorial; (2) the event (paradoxically) preventing "tens of thousands" of others from visiting the Memorial; (3) tribal leaders' opposition to the event; (4) the potential environmental

impact; and (5) a hypothetical conflict with an unidentified construction project scheduled to be completed in June. The letter made no attempt to quantify or otherwise characterize the risk level for this year's planned event nor did it explain how the risks purportedly differed from the risk level for the exact same event last year, which DOI approved.

This Court should preliminarily enjoin DOI's denial of the permit and order it to issue a permit for the event expeditiously. *First*, the State is likely to succeed on the merits. The reasons DOI offered for its denial were inconsistent with its own regulations and contradicted by the administrative record. Tellingly, none of DOI's explanations are longer than a few sentences or contain any discussion of objective criteria or factual findings. And DOI did not even attempt to justify its abrupt about-face following a successful event last year. That is the definition of an arbitrary and capricious agency action under the Administrative Procedure Act ("APA"). *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (an agency's failure to "articulate a satisfactory explanation for its action" is arbitrary and capricious). DOI's decision is also not supported by the record it had before it.

*Second*, the State will suffer several irreparable injuries in the absence of preliminary injunctive relief. The State and its businesses will (1) lose substantial income that they cannot recover because of the federal government's sovereign immunity, (2) lose incalculable publicity and good will that normally accompanies the event, and (3) suffer reputational harm from the perception that visiting the Memorial is unsafe.

*Third*, the balance of equities and public interest strongly cut in favor of injunctive relief. There is no counterbalance to the harms that the State will suffer. DOI itself is not harmed by the event. And COVID-19 is the only public harm that DOI has claimed with any specificity. The safety and success of last year's event—when the pandemic was far worse than it is now—completely undermine DOI's claim on this score. The public interest likewise favors the State because thousands of Americans visit the Memorial for the fireworks show with many more watching from home. In addition, it is always in the public's interest to compel federal agencies to abide by their governing regulations when deciding whether to issue permits.

For these reasons and those outlined below, the Court should grant the State's motion for preliminary injunction and order DOI to issue it a permit to conduct the fireworks show.

## BACKGROUND

### A. The Memorial's unique importance to Independence Day celebrations in the United States

"A visit to Mount Rushmore is a moment of communion with the very soul of America." George H.W. Bush, *Remarks at the Dedication Ceremony of the Mount Rushmore National Memorial in South Dakota*, July 3, 1991. Presidents from across the political spectrum have consistently recognized the Memorial as a monument of "permanent importance" that future generations would visit to celebrate the liberties enshrined in the Constitution and seek inspiration from the ideals of the American founding.

Franklin Delano Roosevelt, *Informal Extemporaneous Remarks By The President: Mount Rushmore National Memorial*, Aug. 30, 1936 (predicting that Americans would visit the Memorial for "thousands and thousands of years" to celebrate their forebearers' efforts "to preserve … a decent form of government to operate under"). And, indeed, Americans have done just that. Millions visit the Memorial each year. Many of them do so over the Fourth of July weekend because "the significance of Independence Day holds special meaning at Mount Rushmore." Ex. B, *Memorandum of Agreement Between the Department of the Interior of the United States of America and the State of South Dakota*, 1, May 6, 2019 ("MOA")

The fireworks show is a crucial, and "marquee," part of that experience. April 2003 Assessment at 1-2. DOI itself has noted that "[t]he addition of the fireworks program in 1998" spurred "a substantial increase in the number of visitors to the Memorial and surrounding area." From 1998 to 2009, tens of thousands of Americans across the country traveled to South Dakota to participate in what DOI has described as a "patriotic event that celebrates the best of America and provides an emotional experience for all those who attend." April 2003 Assessment at 3-13**.** Last year, for example, 7,500 people visited the State to celebrate Independence Day at the Memorial. Declaration of James Hagen ¶6. And those visitors spent more than $2 million over the holiday weekend alone. *Id.* With millions of Americans receiving the COVID-19 vaccine every day, the State expects the number of visitors will increase over last year if the event occurs. *Id.* ¶7.

The fireworks show does not just draw visitors for the event, however—it also provides a significant boost to the State's economy and small businesses in other ways. Critically, it burnishes "the image of South Dakota and the Black Hills" by providing "valuable free advertising" about the State "from local, national, and international news coverage of the [event]." April 2003 Assessment at 3-13. Because the event is watched on television by millions of people in the United States and across the world, the State receives tens of millions of dollars in advertising value that increases tourism to the State both on Independence Day weekend *and* throughout the rest of the year. Declaration of James Hagen ¶¶6, 8-9. That leads directly to significant income for the State's small business and tax revenue for the State and local governments. *Id* ¶¶6, 10. Last year's event had an advertising value of at least $22 million according to conservative estimates. *Id.* ¶4. And Google searches for "Mount Rushmore" during and after the event reached an all-time high—1,250% higher than the previous record—and web traffic to the State's tourism website increased by 872% compared to 2019. *Id.* ¶5. There is no doubt that the event was an economic lifeline for the nearly 50,000 South Dakotans who work in the State's tourism industry and who were battered by the effects of the COVID-19 pandemic. *Id.* ¶10.

The event's popularity is precisely why it was so harmful when the State and DOI jointly decided to cancel the show in 2010 because a rare infestation in the pine forest surrounding the Memorial created a wildfire risk that was "unlike any year before." Rapid City Journal, *Mount Rushmore fireworks canceled*, Jan. 14, 2010,

https://bit.ly/2P0b2cd. At that time, both parties expressed confidence that the show would return the following year. *Id.* Those conditions ultimately persisted for several years and prevented the show from returning quickly. Throughout those years of postponement, however, the State and DOI were aligned in the belief that that the fireworks show was a seminal event Rapid City Journal, Mount Rushmore fireworks canceled, Jan. 14, 2010, https://bit.ly/2P0b2cdfor both South Dakota and the nation, and that it should be resumed as soon as feasible.

### B. The State and DOI enter into a Memorandum of Agreement and Project Agreement to restore the Memorial's fireworks show.

The State and DOI initiated substantive discussions in early 2019 about restarting the traditional fireworks show on Independence Day weekend. Declaration of Kennedy Noem ¶3. Those discussions culminated with DOI and the State signing a memorandum of understanding on May 6, 2019 committing "to exercise their full authorities … to work to return fireworks to [the Memorial] in a safe and responsible manner on July 3, July 4, or July 5, *beginning in the year 2020*." MOA at 2 (emphasis added).

On October 3, 2019, DOI's then-Deputy Assistant Secretary for Fish and Wildlife and Parks Ryan Hambleton sent South Dakota Governor Kristi Noem a draft Project Agreement to renew the fireworks show. Hambleton "reach[ed] out personally" to Governor Noem "on behalf of DOI in order to be certain" that the State knew "how

important" the partnership was to DOI and that DOI "value[d]" the State's "input on this process." MOA at 4.

As part of the Project Agreement, the State committed to use a "GO/NO-GO Checklist" as a "last-minute decision-making tool prior to ignition of the fireworks." Ex C, Appendix B. The checklist included eleven separate safety conditions that had to be satisfied before the fireworks show was authorized. *Id.* Those determinations included whether the Fire Danger Rating was at a level of "concern," whether the wind speed was below the "preferred" level of "less than 10mph for a 10-minute average," and whether the National Weather Service had "predicted red flag warnings" for the show day or the following day. *Id.* All of the conditions were to be evaluated within one hour of the scheduled start time, and the event would be canceled if any of the results were not "acceptable." *Id.* Furthermore, the State was required to present the contents of the checklist and a recommended course of action to the Secretary of the Interior, who held final approval authority for the show. *Id.*; *see also* Declaration of Kennedy Noem ¶¶4-9.

On July 3, 2020, the event passed all of these safety protocols and the State hosted approximately seven thousand visitors for its annual Independence Day fireworks show. *Id.* State and Memorial employees dutifully ensured that all safety measures were properly in place, and the event occurred without incident—as it always has. Moreover, although the event took place during a peak in the COVID pandemic—

long before any vaccines had been administered—there were zero documented cases of COVID transmission linked to the event. *Id.* ¶11

### C. DOI abandons the Memorandum of Agreement and refuses to permit the 2021 fireworks display.

On October 19, 2020, the State submitted a new permit request to DOI to conduct an Independence Day fireworks show that would be virtually identical to the show DOI had approved the previous year. Ex. D. The State followed up on that application on December 11, 2020, December 22, 2020, and January 4, 2021, to ensure that DOI had all the information it needed for the event. Ex. E. DOI never asked for any additional information. As result, and because the 2020 show was conducted successfully under substantially higher risk conditions than the proposed 2021 event, the State assumed that DOI would continue to operate in good faith under the MOA and approve the request.

But on March 11, 2021, DOI suddenly denied the permit request in a short, one-and-a-half page letter. Ex F, Herbert C. Frost, *Letter to Jim Hagan*, Mar. 11, 2021 ("Denial Letter"). In that letter, DOI claimed that it denied the State's request after "careful consideration" of the relevant facts, briefly pointing to five "factors" that "all weigh into the decision whether to hold a 2021 event":

*First*, DOI noted the waning COVID-19 pandemic and remarked that "planning an event of this size and magnitude that draws people from across the country raises very serious concerns about the ability to adhere to Center for Disease Control

guidance" on social distancing. The letter further stated that, at the outdoor fireworks show "last year, most participants were not wearing face coverings, which are now required in all national parks." DOI did not mention the fact that there was no requirement that visitors to national parks wear face coverings when the previous event was held in 2020.

*Second*, DOI noted in a single sentence that unidentified tribal leaders opposed fireworks at the Memorial, and that it was "committed to respecting tribal connections to the site and building stronger relationships with associated tribes." DOI also revealed, however, that its knowledge of tribal opinions was outdated because "the park committed to the 13 affiliated tribes to conduct a Tribal Cultural Sites/Traditional Cultural Properties Survey of the Memorial in 2020," but that survey had been "delayed until summer 2021."

*Third*, DOI mentioned that "[t]he park continues to monitor levels of perchlorates in the water and the potential for wildfire."

*Fourth*, DOI suggested that the fireworks show on July 3 could limit visitor access to the park on Independence Day because, in DOI's view, the 2020 event prevented "tens of thousands" of people from entering the park on and/or forcing them to cut their visits short.

*Fifth*, DOI stated that the July 3 event could delay the "final phase of a significant construction project in the park" that is already "scheduled to be complete in June 2021."

10

### D. Governor Noem responds to DOI's decision.

The State tried to address DOI's alleged concerns in the Denial Letter and reach a resolution that would allow the show to happen. On April 13, 2021, Governor Kristi Noem sent a letter to President Biden with a point-by-point rebuttal of DOI's reasons for denying the State's permit request. Ex. G, Kristi Noem, *Letter to President Joseph R. Biden*, April 13, 2021 ("Noem Letter"). Governor Noem started by pointing out that on March 11, 2021—the same day that DOI rejected the July 4th fireworks show— President Biden addressed the nation from the Oval Office and said that the nation would "mark [its] independence from this virus" by July 4, 2021. Governor Noem also highlighted that last year the Memorial "hosted more than seven thousand people" and "[c]ontact tracing weeks after the event could not trace a single case of COVID-19 to the event."

Governor Noem also responded to DOI's concerns about the event's effect on tribal relations. Though DOI did not elaborate on those concerns in the Denial Letter, Governor Noem explained that "the tribes were consulted before last year's event and invited to attend our planning meetings," the "Department of Tribal Relations was involved in every step of the process," and there was "Native American-led programming before the fireworks itself." *Id.*; *see also* Declaration of Kennedy Noem ¶4 (highlighting the State's outreach to tribal leaders and NPS's regional Office of Tribal Relations/Indian Affairs).

In addition, Governor Noem explained that the "environmental risks to the park" that NPS mentioned in its letter should be of no concern. "[P]rior to conducting the 2020 celebration, NPS published a 35-page Finding of No Significant Impact (FONSI) stating that the event would not harm the natural environment to the Black Hills." And "when environmental conditions have not been favorable to the fireworks celebration …. We have refrained from holding the event. The same approach would occur this year."

Governor Noem likewise responded to DOI's concern that the event could preclude others from visiting the memorial. She explained that DOI "is painting a very misleading picture" because "[l]ong before the pandemic hit, the State of South Dakota agreed to limit attendance for the fireworks due to previous years' poor crowd control and the resulting overcrowding." That is "also why we celebrate on July 3, so that everyone can enjoy the Memorial on July 4."

Governor Noem concluded by detailing the extensive precautions and procedural safeguards the State and NPS used to ensure that last year's show would "be held safely and responsibly." Those protocols included, among other things, "follow[ing] every item on the National Environmental Policy Act (NEPA) compliance checklist"; "creat[ing] a Go/No-Go checklist with conditions that must be met on the day of the event, including fire preparedness levels, wind speeds, and burning index; complying with the requirement that the checklist be "signed by the Interior Department on the day of the event"; "implement[ing] an incident management team

that met every guideline outlined by Ready.gov"; ensuring there was "an emergency operations center on site for two weeks"; creating "an emergency response checklist and manual" for staff; and "coordinat[ing] with NPS on all communication activities relating to the event." *Id.*; *see also* Declaration of Kennedy Noem ¶¶4-9.

Governor Noem did not receive a response, and DOI provided no further clarification or justification separate from the Denial Letter. Faced with no other option and no prospect of cooperation from DOI, the State brought this suit to prevent the irreparable harm caused by DOI's denial of its permit request.

## STANDARD OF REVIEW

"A district court considering injunctive relief evaluates the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest." *Sessler v. City of Davenport, Iowa*, 990 F.3d 1150, 1154 (8th Cir. 2021). A plaintiff satisfies the first prong if it demonstrates a "fair chance of prevailing" on the merits. *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers*, 826 F.3d 1030, 1040 (8th Cir. 2016) (quoting *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008)). This test is "appropriate" in challenges to "forms of other government action such as administrative actions by federal, state, or local government agencies," when the "full play of the democratic process [is not] involved." *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 1000 (8th Cir. 2019).

# ARGUMENT

## I.     The State is likely to succeed on the merits of its APA claim.

The APA requires a reviewing court to hold unlawful and set aside any agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. §706(2)(A). Like all agency actions, an agency's decision to deny a permit falls under the APA and therefore must satisfy the arbitrary and capricious standard. *See McClung v. Paul*, 788 F.3d 822, 828-30 (8th Cir. 2015); *see also Drakes Bay Oyster Co. v. Salazar*, 921 F. Supp. 2d 972, 985 (N.D. Cal. 2013) ("[A] decision not to issue a special use permit constitutes 'agency action' under the APA.").

"To withstand judicial review under this standard, an agency must 'articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Grace Healthcare of Benton v. U.S. Dep't of Health & Hum. Servs.*, 603 F.3d 412, 422 (8th Cir. 2009) (quoting *Motor Vehicle Mfrs.,* 463 U.S. at 42). Agencies must provide such a "reasoned explanation" for their actions "to ensure that all agencies offer genuine justifications for important decisions, reasons that can be scrutinized by the courts and the interested public." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575–76 (2019). Whether an agency decision is justified by a reasoned explanation is determined solely by the agency's "contemporaneous explanations" for the decision. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909 (2020).

An agency also may not "offer[] an explanation for its decision that runs counter to the evidence before the agency." *Sugule v. Frazier*, 639 F.3d 406, 411 (8th Cir. 2011). And it must "support its predictive judgments" with actual evidence. *Bus. Roundtable v. S.E.C.*, 647 F.3d 144, 1149-50 (D.C. Cir. 2011); *see also Grace Healthcare of Benton*, 603 F.3d at 422 (holding that agency failed to satisfy arbitrary and capricious review where its decision "was based on pure speculation"). And although courts afford some deference to agency decisions, "deference … does not mean [a] rubber stamp." *Niobrara River Ranch, L.L.C. v. Huber*, 373 F.3d 881, 883 (8th Cir. 2004) *see also McClung*, 788 F.3d at 828 (upholding agency permitting decision only after determining that the administrative record "provide[d] ample support" for the agency's action); *Bd. of Cty. Comm'rs of Cty. of Adams v. Isaac*, 18 F.3d 1492, 1497 (10th Cir. 1994) (A "court will not defer to irrational agency judgments").

DOI does not come close to meeting this standard, for several independent reasons.

### A. DOI's decision is arbitrary and capricious because it failed to provide a reasoned explanation for its actions.

DOI's cursory Denial Letter—which is barely more than a page long—does not supply a "reasoned explanation" for the agency's refusal to allow an event that was held successfully just last year. Four of DOI's five justifications span just a sentence or two and contain no accompanying facts, elaboration, or explanation. On the neighboring tribes, for example, DOI noted that some tribes "expressly oppose fireworks at the

memorial." But DOI did not identify the tribes, explain why they oppose fireworks, explain why that opposition could not be accommodated, or explain how this consideration has changed since last year's successful event.

DOI also noted that it "continues to monitor levels of perchlorates in the water and the potential for wildfire." Denial Letter at 2. Yet DOI did not explain whether the perchlorate levels are at inappropriate levels or whether there is a current risk of wildfire, much less explain why those issues weigh against issuing a permit. All DOI could say is that it "continues to monitor" these issues.

Likewise, DOI noted in a single sentence that "[t]he 2020 event … impacted tens of thousands who were not able to visit the memorial or had their visit cut short." Denial Letter at 2. But DOI does not actually *say* that it believes the same would be true for 2021 if the event were executed in the same way. And DOI did not explain whether changes to the event could mitigate that perceived problem.

DOI also suggested in a single sentence that the event could delay an unidentified construction project. But DOI did not explain how a one-day event could affect this project when it is (a) already in its "final stages" and (b) set to be completed June—a month *before* the event.

None of these explanations provides "a rational connection between the facts found and the choice made,'" *Grace Healthcare of Benton*, 603 F.3d at 422. Nor do they provide sufficient information so that they "can be scrutinized" by the Court. *Dep't of*

16

*Com*, 139 S. Ct. at 2575–76. DOI's reliance on these factors is thus arbitrary and capricious.

That leaves DOI's fifth justification: its purported concerns about COVID-19. Unlike the other four justifications, DOI dedicated a paragraph to COVID-19. Yet DOI managed to contradict its own reasoning just a few sentences later. Allowing the fireworks event would be too risky, DOI explained, because it "draws people from across the country" and "raises very serious concerns about the ability to adhere to Center for Disease Control guidance, which recommends that large gatherings be avoided." Denial Letter 1. Immediately thereafter, however, DOI justified its decision by noting that the event could prevent "tens of thousands" of tourists from accessing the Monument. *Id.* at 2. In other words, DOI claimed that crowds are *undesirable* for fireworks but *desirable* for other purposes. And DOI made no attempt to distinguish between these situations—all of which involve outdoor activities, where transmission risk is low—in terms of their COVID risk. DOI's reasoning is "internally inconsistent and therefore arbitrary." *Bus. Roundtable*, 647 F.3d at 1153; *Nat'l Parks Conservation Ass'n v. E.P.A.*, 788 F.3d 1134, 1141 (9th Cir. 2015) ("An internally inconsistent analysis is arbitrary and capricious."); *see also Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1037 (N.D. Cal. 2020) ("While the court is cognizant of the burdens imposed by society's response to the COVID-19 … a basic tenet of the APA (and government generally) is to explain the basis for an agency's decision that affects legal rights and responsibilities.").

Even setting aside these internal inconsistencies, however, DOI's decision is arbitrary and capricious because the agency does not explain why it changed positions from last summer when it approved a substantially similar event. To be sure, agencies can change their mind. But the APA requires that they "provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). And the agency must "*at least* 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Id.* (emphasis added). That is because "a reasoned explanation is needed for disregarding facts and circumstances that underlay and were engendered by the prior policy." *Id.*

Nowhere does DOI explain why it changed its position after last year's successful event. For example, it did not explain why COVID-19 was an acceptable risk last year (when the pandemic was worse) but not this year (when cases are plummeting and millions of Americans are being vaccinated every day); did not explain why tribal concerns were not an issue last year but are this year; and did not explain why water perchlorates and the potential for wildfire were not problems last year but are this year. Indeed, one would hardly know from the Denial Letter that DOI had changed positions at all, much less that the event was successfully held just one year ago. DOI's failure to offer a reasoned explanation for its abrupt about-face renders its decision arbitrary and capricious. *Id.*

18

## B. DOI's decision is arbitrary and capricious because it runs counter to the evidence.

There is also no evidence in the record supporting DOI's justifications. Again, DOI provided *nothing* beyond ipse dixit to document its claims of tribal opposition; how the event would interfere with an unnamed construction project; or the park's water perchlorate levels or risk of wildfire. These failures to "provide a satisfactory explanation for its actions based on relevant data," *Niobrara River Ranch, LLC.*, 373 F.3d at 884, constitute classic arbitrary and capricious decision making. And DOI's proffered concerns about "tens of thousands" of visitors is misleading. Long before the COVID-19 pandemic, South Dakota agreed to limit attendance for the fireworks show to ensure adequate crowd control measures could be implemented. Noem Letter at 2; Declaration of Kennedy Noem ¶4.

DOI's failure to cite any specific evidence is unsurprising because the record flatly contradicts its proffered justifications. *See, e.g.*, *Sugule*, 639 F.3d at 413 (agency acted arbitrarily and capriciously because its "conclusion 'runs counter to the evidence before the agency.'"); *Dep't of Commerce*, 139 S. Ct. at 2593 (same). For example, DOI's suggestion that the show could create unsafe perchlorate levels in local water sources is inconsistent with the 2020 FONSI. That comprehensive environmental assessment stated that "additional analysis may be necessary to evaluate future events" if soil samples showed "that conditions had *changed meaningfully*" after the 2020 event. Ex. H at 3 (emphasis added). DOI did not claim that perchlorate levels had changed

meaningfully, only that it would "continue[] to monitor the levels of perchlorate." Denial Letter at 2.

This again leaves COVID-19. On that issue, the Denial Letter rested on factual assumptions that are at odds with the administration's own public statements. The Biden administration has delivered on its promise that every American adult will be eligible to get a COVID-19 vaccine months before Independence Day, and state governments are increasingly lifting social distancing mandates. *See* Press Briefing by White House COVID-19 Response Team and Public Health Officials, White House (April 23, 2021) ("[T]hanks to President Biden's directive, everyone 16 and over is now eligible to get the vaccine."), https://bit.ly/2R159fi ("Vaccine Announcement"). DOI's description of the COVID-19 risks posed by an outdoor fireworks show are also inconsistent with CDC guidance, which states that outdoor activities pose the lowest risk. *See* Participate in Outdoor and Indoor Activities, CDC (Jan. 14, 2021), https://bit.ly/3nnrwro. When an agency's explanation for a decision so clearly conflicts with the executive branch's public posture, courts "are not required to exhibit a naivete from which ordinary citizens are free" and should "not ignore the disconnect between the decision made and the explanation given." *Dep't of Com.*, 139 S. Ct. at 2575-76.

DOI's COVID-19 concerns also rest on "pure speculation" rather than being grounded in objective facts. *See Grace Healthcare of Benton*, 603 F.3d at 422. DOI relies on two factors to support its COVID-19 justification. First, DOI asserts that the size of the event would "make it difficult, if not impossible, to comply with social distancing

protocols *if they continue to be in place in early July*." Denial Letter at 1 (emphasis added). By its own admission, then, DOI denied a permit request in March 2021 because it speculates that temporary public health guidance about outdoor events may still be in place in July 2021. In fact, the CDC has *already* begun to update its guidance regarding outdoor activities in light of undisputed science showing that such activities pose minimal risks of COVID transmission, especially for those who (like nearly 52% of Americans) have been vaccinated. *See* Interim Public Health Recommendations for Fully Vaccinated People, CDC (Apr. 27, 2021), https://bit.ly/3t06qk9; Vaccine Announcement"), *supra.*

Second, DOI wrote that "as we saw last year, most participants were not wearing face coverings" Denial Letter at 1. But unlike in 2020, masks "are now required in all national parks where physical distancing cannot be maintained." *Id.* DOI's explanation, in other words, rests on a suggestion that visitors disregarded a park policy that *did not exist last year*, and speculation that (assuming the policy is still in place in July) visitors will actually disregard it later this year. Such rank speculation does not come close to constituting reasoned decisionmaking under the APA.

***

For all these reasons, the State is likely to succeed on its claim that DOI's decision was arbitrary and capricious.

## II.   The State satisfies the remaining criteria for a preliminary injunction.

The State easily satisfies the remaining criteria for a preliminary injunction.

***Irreparable harm.*** The State will suffer irreparable harm in the absence of an injunction for several independent reasons. First, the State and its businesses will lose substantial income that they cannot recover because the federal government's sovereign immunity forecloses any possibility of recovering monetary damages. *See Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 320 (8th Cir. 2009) ("Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."); *Xiaomi Corp. v. Dep't of Def.*, 2021 WL 950144, at *10 (D.D.C. Mar. 12, 2021) ("[W]hen a plaintiff's alleged damages are unrecoverable, such as here, due to the sovereign immunity enjoyed by Defendants, courts have recognized that unrecoverable economic loss can indeed constitute irreparable harm.").

Second, and separate from that lost income and tax revenue, the State will lose incalculable publicity and good will. *See Xiaomi Corp.*, 2021 WL 950144, at *9 ("[B]ecause '[i]njury to reputation or goodwill is not easily measurable in monetary terms' it is typically 'viewed as irreparable.'") (collecting cases). Last year's event created enormous publicity for the State. Web traffic to the South Dakota Department of Tourism's website increased by 872% and pushed Google searches for "Mount Rushmore" to an all-time high—1,250% higher than the previous record. Declaration of James Hagen ¶5. That type of exposure inspires thousands of visitors to travel to the State during other parts of the year; and similar benefits will be lost if the State cannot hold the event this year. *Id.* ¶¶8-10, 14. The fireworks celebration has another intangible benefit for

the State: it burnishes the State's image and reinforces residents' sense of pride in their home state. *Id.* ¶11. Cancelling it will erase that as well.

Third, DOI's suggestion that it is *unsafe* to visit the Memorial in July—even for low-risk outdoor activities—inflicts reputational harm. Because tourism is such a significant part of South Dakota's economy, the State has taken many steps to convince potential tourists that visiting the State during the pandemic is safe. Declaration of James Hagen ¶12. For example, the Department of Tourism has included a "safe travel" message in all of its television, print, and digital marketing. *Id.* It has also developed a COVID-19 resource page for the South Dakota tourism industry that includes the latest guidelines and recommendations from the CDC and South Dakota Department of Health. *Id.* It has also shared monthly COVID-19 email updates with thousands of members of the tourism industry. *Id.* Denying the permit on grounds that visiting Memorial is unsafe will contradict the State's own efforts to encourage tourism. *Id.* ¶13. And because the Memorial and the fireworks show are a significant part of the State's image, it will unnecessarily deter visitors who otherwise would have visited the State. *Id.*; *see Xiaomi*, 2021 WL 950144, at *10 (holding that it is irreparable harm for an agency to mislabel a party in a manner that harms its reputation). And there is simply no way to measure these losses, Declaration of James Hagen ¶¶9, 11, 13, which means DOI's actions will cause the State irreparable harm.

**Balance of harms.** The balance of the equities also favors an injunction. The State has highlighted all the harms that will befall it if the event does not go forward.

*See supra*. On the other hand, the State is not aware of even the "slight[est]" harm that would befall DOI if the Court enters an injunction. *D.M. by Bao Xiong*, 917 F.3d at 1004. As for the public at large, the only harm to the public that DOI identified with more than a cursory mention is COVID-19. But last year the State was able to put on the exact same event by implementing a panoply of protocols to ensure the safety of its visitors and park employees. Declaration of Kennedy Noem ¶11. And even though the pandemic was far worse than it is today, contact tracers could not identify a *single* case of COVD-19 that originated at the event. *Id.* And this year's event will be even *safer* given that every American will have been eligible for a COVID-19 vaccine for almost three months before Independence Day. *See* Vaccine Announcement"), *supra*.

On safety more generally, the State would conduct the event with the same extensive precautions and procedural guardrails the State and DOI used last year. For example, the State would follow every item on the National Environmental Policy Act (NEPA) compliance checklist; adhere to a Go/No-Go checklist with conditions that must be met on the day of the event, such as fire preparedness levels, wind speeds, and burning index; plan the event subject to DOI's ultimate signoff on the day of the event; and implement an incident management team that meets every guideline outlined by Ready.gov, among other things. Declaration of Kennedy Noem ¶¶4-9.

For these reasons, a preliminary injunction will merely allow the State to hold the same Independence Day celebration that it successfully and safely held last year, and to do so under better conditions in terms of the COVID pandemic.

*Public interest.* An injunction would also be in the public interest. The Memorial's Fourth of July weekend fireworks is attended by thousands of Americans from every part of the country and watched on television by millions more. Declaration of James Hagen ¶¶6, 8. After the recent hardships imposed by the pandemic, the deprivation of an eagerly anticipated, patriotic event will be especially dispiriting. And "just as important as the public interest in potential economic gains is 'the public's confidence that its government agencies act independently, thoroughly, and transparently when reviewing permit applications." *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997 (8th Cir. 2011).

## III.   The Court should direct DOI to issue the fireworks permit.

The APA provides that "a reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). "[A]n arbitrary and capricious action is one that is 'unlawful' within the meaning of section 706(1)." *Hondros v. U.S. Civ. Serv. Comm'n*, 720 F.2d 278, 297 (3d Cir. 1983). So "when an agency arbitrarily or capriciously withholds action, [courts] may compel the agency to act." *Id.* at 297-298 (citing *Carpet, Linoleum & Tile Layers, Local Union No. 419 v. Brown,* 656 F.2d 564, 566–67 (10th Cir. 1981)); *see also ILMC v. Perez,* 2014 WL 1668131, at *15-16 (M.D.N.C. April 25, 2014) (same); *Huff v. Vilsack*, 195 F. Supp. 3d 343, 361-63 (D.D.C. 2016) (holding that an agency acted arbitrarily and capriciously and granting the plaintiff injunctive relief); *Roe v. Dep't of Def.*, 947 F.3d 207, 226 (4th Cir. 2020) (upholding district court's injunction based on arbitrary and capricious finding). A plaintiff thus can obtain

such relief where it "asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *New Holy v. DOI*, 2020 WL 3542251, at \*4 (D.S.D. June 30, 2020). And this framework applies where it is the agency's own regulations that remove the agency's discretion to act. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) ("The limitation to *required* agency action" applies to "agency action" that is "demanded by law (which includes, of course, agency regulations that have the force of law).").

DOI's regulations state it "shall deny a permit that has been properly applied for *only upon a determination that* … one or more of the factors set forth in [36 C.F.R. §1.6(a)] would be adversely impacted." 36 C.F.R. §1.6(d) (emphasis added). Section 1.6(a), in turn, provides that DOI can deny a permit only if granting it would be inconsistent "with applicable legislation, Federal regulations and administrative policies," or would "adversely impact[]" (1) "public health and safety"; (2) "environmental or scenic values"; (3) "natural or cultural resources"; (4) "scientific research"; (5) "implementation of management responsibilities"; (6) the "proper allocation and use of facilities"; or (7) "the avoidance of conflict among visitor use activities." 1.6(a). By the plain text of the regulation, these are the "only" reasons that justify a permit denial. *See* 36 C.F.R. §1.6(d).

The 2021 fireworks show does not implicate any of the reasons for a denial listed in sections 1.6(a). As demonstrated, *supra*, 11, 17-18, DOI identified zero actual *evidence* that the event would "adversely impact" public health, the environment, or the "proper allocation and use of" the Memorial. And it certainly would not "conflict" with other

"visitor use activities" at the Memorial. With no viable factor to rely on under §1.6(a), DOI had no discretion to deny the permit under §1.6(d). *C.f.*, *Regents*, 140 S. Ct. at 1909 (holding that any agency can rely only on its "contemporaneous explanations for agency action.")

This is particularly true because DOI denied the State's permit request "after careful consideration." *See* Denial Letter at 1. To that end, "the Court must presume that the individual employees who" reviewed the State's application "undertook their duties in good faith." *Huff*, 195 F. Supp. 3d at 362-63. That requires a court to "credit the agency's representation that the [] application was given 'careful consideration' during the [review] process," which means "it is entirely reasonable to infer, based on the agency's own evaluation of the application at issue, *that no other reasons for the denial exist*." *Id.*

As a result, "in lieu of remanding the case to the agency to perform its only permissible task (grant the application) … the best course is for this Court to apply [the] obvious result." *Id.* When a court determines that an agency's justifications for the denial are meritless or inconsistent with its own regulations, "there is only one rational course for the Agency to follow upon remand.," *id.* at 362—granting the requested permit. This principle applies with even greater force where, as here, "time is of the essence." *Id.* at 363.[1]

---

[1] DOI has (1) failed to articulate its reasoning and (2) its decision runs contrary to the evidence. *Compare* Section I(A) *with* Section I(B). The former can result in a remand to the agency to try again.

If the Court does not order DOI to grant the State its permit, then it should at a minimum remand the case to DOI with instructions to reconsider the State's application. The State needs at least 30 days before Independence Day to plan the event. Declaration of James Hagen ¶15. So should the Court remand, it should do so with an order compelling DOI to grant the permit or issue an updated decision by May 31, 2021. *See, e.g., A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1492 (D.C. Cir. 1995) (remanding with a deadline to issue an updated decision with adequate justification for the agency's decision, after which the challenger would automatically be entitled to full relief); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1193 (10th Cir. 1999) (remanding with order for the agency to issue a new decision "as soon as possible."); *Rodway v. USDA*, 514 F.2d 809, 817-18 (D.C. Cir. 1975) (remanding with a deadline for the agency to reconsider its decision). That will give the State sufficient time to prepare for the fireworks show.

## CONCLUSION

For the foregoing reasons, the State respectfully requests that this court grant the State's motion for preliminary injunction.

---

*See Union Pacific R. Co. v. U.S. Dept. of Homeland Sec.*, 738 F.3d 885, 901 (8th Cir. 2013). The latter, however, counsels in favor of injunctive relief because "the application of the correct legal standard could lead to only one conclusion." *Id.*

Dated: April 30, 2021

Respectfully submitted,

*/s/ Katie Hruska*

———————————————————

Katie Hruska (S.D. Bar. No. 4596)
Mark Miller (*pro hac vice* application forthcoming)
Special Assistant Attorney General
500 East Capitol Avenue
Pierre, SD 57501
(605) 773-5999
Katie.Hruska@state.sd.us
Mark.Miller@state.sd.us

Jeffrey M. Harris (*pro hac vice* application forthcoming)
Bryan Weir (*pro hac vice* application forthcoming)
James F. Hasson (*pro hac vice* application forthcoming)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com
bryan@consovoymccarthy.com
james@consovoymccarthy.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2021, I caused the foregoing document to be served on all parties through in-person service of process.

*/s/ Katie Hruska*